813 F.2d 178
 Jack W. CAROLAN, individually, and Jack W. Carolan and
Sandra Kay Carolan and Mathew George Carolan, as
Directors and Trustees for Cactus Jacks,
Inc., a forfeited Missouri
Corporation, Appellants,
v.
CITY OF KANSAS CITY, MISSOURI, Appellee.
 No. 86-1597.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 13, 1986.
Decided March 6, 1987.
 
 Donald H. Loudon, Kansas City, Mo., for appellants.
 William D. Geary, Kansas City, Mo., for appellee.
 Before McMILLIAN, ARNOLD and WOLLMAN, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Jack W. Carolan, individually, and Jack W. Carolan, Sandra Kay Carolan, and Mathew George Carolan, as directors and trustees of Cactus Jacks, Inc., a defunct Missouri corporation appeal from a final judgment entered in the District Court[1] for the Western District of Missouri granting summary judgment in favor of the City of Kansas City, Missouri (the City), in an action brought pursuant to 42 U.S.C. Sec. 1983. Carolan v. City of Kansas City, No. 84-1801-CV-W-S (W.D.Mo. Mar. 14, 1986). For reversal appellants argue that (1) the City arbitrarily and capriciously refused to renew their temporary occupancy certificate or to treat the expired certificate as in force in accordance with City custom and practice, (2) the post-deprivation hearings provided by the City failed to satisfy procedural due process, and (3) the City discriminated against appellants in handling their application for an amended building permit and a temporary occupancy certificate and in suspending their liquor license. We affirm the judgment of the district court but for reasons other than those cited in the district court memorandum.
 
 
 2
 Jack W. Carolan is the sole stockholder of Cactus Jacks, Inc., a defunct Missouri corporation. In January 1981, Carolan, having purchased property in the City for the purpose of constructing a restaurant, submitted an application for a building permit, which was issued on May 1, 1981. In the fall of 1981, Carolan began constructing a mezzanine overhanging the kitchen section of the restaurant although a mezzanine had not been included in the plan submitted for the building permit.
 
 
 3
 Carolan planned to open the restaurant on New Year's Eve 1981, for which an occupancy certificate and a liquor license were required. An occupancy certificate, under the City Building Code, would only be issued if a valid building permit had been secured. Carolan's building permit was not valid because of the mezzanine. City officials met at the restaurant on December 28, 1981, to inspect the building and to consider Carolan's request for an occupancy certificate. Following this inspection the City issued a temporary certificate of occupancy, which expressly prohibited the use of the mezzanine and on its face indicated that the certificate would expire on February 1, 1982. The restaurant subsequently received a liquor license and opened on schedule.
 
 
 4
 In order to receive a permanent occupancy certificate Carolan, on January 10, 1982, submitted an application for an amended building permit, which included plans for the mezzanine. On February 8, 1982, the City returned the building plans to Carolan and advised him of the deficiencies still existing in the plans. Carolan successfully appealed to the Building Code Board of Appeals concerning one of the conditions listed as a deficiency. In April 1982 he undertook another appeal, but this one was unsuccessful. The board refused to approve the building for fixed seating. Carolan submitted a second amended application for a building permit on July 1, 1982, and submitted additional information on July 21 and July 30, 1982. The amended building permit was finally issued in August 1982.
 
 
 5
 During the period from February 1, 1982, through August 18, 1982, the restaurant operated without a valid temporary or permanent occupancy certificate. In June 1982 Carolan was charged in municipal court with constructing the mezzanine without a building permit and using the mezzanine without an occupancy certificate. The absence of an occupancy certificate also placed the restaurant's liquor license in jeopardy because a liquor license may remain in force only so long as there is a valid occupancy certificate. On June 23, 1982, the City Supervisor of Liquor and Amusement issued an order to Carolan to appear on June 29, 1982, to show cause why the restaurant's liquor license should not be suspended. Following the hearing on June 29, 1982, the liquor license was suspended for 90 days, beginning July 12, 1982; the suspension would be removed if the occupancy certificate for the premises was issued.
 
 
 6
 Carolan asserts that from January 1982, when he applied for the amended building permit to August 1982, when the permit was finally issued, he repeatedly contacted City officials, offering to make any improvements to the building or plans required in order to receive the amended building permit. City officials recall no contact with Carolan or his engineer until July 1982. City officials, according to their testimony, conferred frequently with Carolan's engineer after July 1982 to resolve design problems with the mezzanine.
 
 
 7
 Carolan contends that in the first three months of its operation, from January through March 1982, the restaurant showed a profit of $61,000. Due to the loss of the occupancy certificate the restaurant encountered economic difficulties (loss of lines of credit, trouble with suppliers and employees, loans called in). After the liquor license was suspended in July 1982, the restaurant closed and never reopened. Eventually Carolan transferred the restaurant to another corporation.
 
 
 8
 In December 1984 appellants filed this civil rights action in the District Court for the Western District of Missouri. The district court entered summary judgment in favor of the City in March 1986. This appeal followed.
 
 
 9
 Appellants initially contend that the district court erred in granting summary judgment on their substantive due process claim in favor of the City. Appellants argue that the City's failure to renew or to treat the temporary occupancy certificate as in force after it expired in February 1982 constituted arbitrary and capricious administration of the building code. Appellants contend the City's custom and practice for several years prior to the collapse of the skywalks at the Hyatt Regency Hotel in July 1981 was to allow businesses to continue to operate once any form of occupancy certificate had been granted, provided there were good faith efforts to secure a valid building permit and the operation of the business was not a danger to public safety. This alleged course of conduct included permitting a business to retain its liquor license without a valid occupancy certificate. Carolan also asserts that city officials made repeated representations to him that they would not interrupt operation of the restaurant so long as he was making good faith efforts to acquire the amended building permit.
 
 
 10
 The City responds that the change in the City's enforcement of its building code is not arbitrary and capricious. The relevant inquiry, according to the City, is not whether Carolan was acting in good faith to obtain a building permit but whether the city's enforcement of the building code was rational. The City argues that stricter enforcement of the building code, if this occurred, would be a rational response to the Hyatt Regency tragedy. The City emphasizes that its enforcement actions against Carolan were at all times consistent with the provisions of the building code; no additional requirements were imposed on Carolan; nor did the City act in a malicious, discriminatory or unreasonable manner in enforcing the building code.
 
 
 11
 The City further contends that Carolan was granted only a temporary occupancy certificate and thus he was put on notice that he would be required to strictly comply with the building code in order to acquire a permanent occupancy certificate. The City argues that any representations made to Carolan were made prior to the granting of the temporary occupancy certificate.
 
 
 12
 Analysis of a due process claim, either substantive due process or procedural due process, begins with an examination of the constitutional interest which allegedly has been violated. Appellants, citing Littlefield v. City of Afton, 785 F.2d 596, 600 (8th Cir.1986) (Littlefield ), argue that they had a constitutionally protected property interest in the temporary occupancy certificate. We do not agree. "Property interests are created and their dimensions defined by existing rules or understandings that stem from an independent source, such as state law, rules or understanding that support claims of entitlement to certain benefits." Id. In Littlefield, this Court held that state law creates a property interest in a building permit if the municipality, under state law or ordinance, lacks discretion and must issue a building permit to an applicant who complies with the statutory requirements and the applicant has fulfilled the requirements. Id. at 601. Both conditions must be met before a constitutionally protected property interest in a building permit arises.
 
 
 13
 Appellants do not dispute that they had not secured a valid building permit at the time they sought an extension of the temporary occupancy certificate. A building permit, which reflects compliance with the requirements of the city building code, is a prerequisite to the securing of a permanent occupancy certificate. Thus, appellants have not fulfilled the requirements for the issuance of the occupancy certificate and, under Missouri law, do not have a protected property interest in the occupancy certificate. We need not decide whether the City is required to issue a building permit upon appellants' compliance with the ordinance.
 
 
 14
 We hold that the district court properly granted summary judgment on appellants' substantive due process claim because appellants did not have a constitutionally protected property interest in the occupancy certificate. Appellants' own evidence established that they had failed to comply with the requirements for an occupancy certificate. Consequently, there were no genuine issues of material fact. Appellants' procedural due process claim was properly dismissed for the same reason.
 
 
 15
 Appellants next contend that the district court erred in granting summary judgment on their equal protection claim. Appellants argue that the City's failure to act upon their application for the amended building permit for seven months, refusal to extend the temporary certificate of occupancy, and suspension of their liquor license constituted discriminatory conduct. Appellants assert that their evidence would show that prior to the Hyatt Regency disaster, other City construction projects were permitted to proceed without valid building permits and temporary certificates of occupancy were extended even though required work had not been completed. The City responds that even if it engaged in stricter enforcement of the building code after the Hyatt Regency skywalk disaster, this stricter enforcement does not violate equal protection because there was a rational basis for the action, that is, the Hyatt Regency skywalk disaster itself, which precipitated stricter building code enforcement.
 
 
 16
 Appellants' argument is meritless. Appellants do not assert that the City's allegedly stricter enforcement of its building code interferes with a fundamental right nor do appellants assert that they belong to a suspect class. Thus, the City's actions are reviewed under the less strict "rational basis" test. The Hyatt Regency skywalk disaster was caused by a structural defect in a building and resulted in over one hundred deaths and hundreds of injuries. The City's stricter enforcement of its building code is a rational response to this disaster. The City had as its purpose the detection of structural defects in buildings which could result in injury to the public.
 
 
 17
 Accordingly, we affirm the judgment of the district court granting summary judgment.
 
 
 
 [1]
 The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri