682 F.Supp. 989 (1988)
WINTERCREEK APARTMENTS OF ST. PETERS, et al., Plaintiffs,
v.
CITY OF ST. PETERS, et al., Defendants.
No. 86-2019C(6).
United States District Court, E.D. Missouri, E.D.
March 21, 1988.
*990 Samuel C. Ebling, David T. Hamilton, Gallop, Johnson & Neuman, St. Louis, Mo., for plaintiffs.
Robert J. Krehbiel, Evans & Dixon, St. Louis, Mo., Rollin J. Moerschel, Thompson & Mitchell, St. Charles, Mo., Shulamith Simon, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, St. Louis, Mo., for defendants.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on defendants' motion for summary judgment.
The uncontested facts are as follows. Plaintiffs Wintercreek Apartments of St. Peters ("Wintercreek"), Cardinal Industries, Inc. ("CII") and Cardinal Industries Development Corporation ("CIDC") (referred to hereinafter collectively as "Cardinal") seek to develop certain real property (the "Site") located in the City of St. Peters, Missouri ("City"). St. Peters is a *991 fourth class municipal corporation organized and existing under the laws of the State of Missouri and located in St. Charles County.
On October 29, 1985 CII executed a contract for the purchase of the Site which was at that time and continues to be zoned "R-3A Multiple Family District". Cardinal planned to construct a 168-unit modular apartment complex at the Site, using modular units[1] manufactured by CII. Cardinal is the only developer who has proposed the development of modular housing in St. Peters.
On March 5, 1986 the Planning and Zoning Commission of the City held a public hearing on a proposed amendment to Ordinance No. 1009, the City's general zoning ordinance. The amendment added a definition of "modular unit" to the ordinance and included modular units in the list of permitted uses for areas zoned "RM Mobile Home Residential District." Defendants concede that notice of the time and place of the hearing on the proposed amendment was not published more than fifteen days before the hearing as required by that portion of Ordinance No. 1009 which specifies amendment procedures. See Ordinance No. 1009, art. 10, § 2. Following the hearing on the proposed amendment before the Planning and Zoning Commission the Commission recommended adoption of the amendment by the Board of Aldermen.
On March 13, 1986 the Board of Aldermen held a hearing on the proposed amendment. Notice of this hearing was published in the St. Louis Post Dispatch on February 26, 1986 in conformity with the requirements of the zoning ordinance and state law. The amendment was read three times and adopted without alteration by the Board as Ordinance No. 1100. Prompted by the doubt of Joseph Bell, a former city planner for St. Peters and the drafter of Ordinance No. 1100, concerning the validity of the measure, the Planning and Zoning Commission met on May 7, 1986 to consider repeal of the Ordinance. The Commission was evenly split on the question, reaching a 2-2 vote. The effect of this vote was to require the Board of Aldermen to approve the repeal by a two-thirds majority before it could become effective.
On May 22, 1986 the Board of Aldermen met to consider the repeal of Ordinance No. 1100. Mr. Irvin, the City Administrator, stated that in the opinion of the City's staff, there was little interest in repeal and he moved to withdraw consideration of the issue. The Board voted in favor of the withdrawal.
At its May 7, 1986 meeting the Planning and Zoning Commission also considered Cardinal's request for approval of the Project site plan. The City staff recommended approval of the site plan subject to four conditions: (1) rezoning of the Site to R-M to comply with Ordinance No. 1100; (2) submission of an architect's drawing of the structures to be erected; (3) a letter of approval of street names; and (4) compliance with Ordinance No. 753, relating to storm water management. The Planning and Zoning Commission approved the site plan contingent only upon compliance with the storm water management ordinance.
On June 18, 1986 Cardinal submitted plans for the Project to the City's Engineering Department and requested approval of those plans and the issuance of the appropriate permits. On June 24, 1986 Mr. Earl Holtgraewe, Director of Engineering, notified Cardinal that due to its failure to comply with Ordinance No. 1100, the City would not issue the requested permits or give further consideration to Cardinal's plans for development of the Project.
Plaintiffs then filed this complaint pursuant to 42 U.S.C. § 1983 against the City, the Mayor, the City Administrator, the Director of Engineering for the City and individual members of the Board of Aldermen, asserting violations of their rights under the United States Constitution. Plaintiffs *992 also asserted pendent claims charging violations of their rights under the Missouri constitution. Specifically, plaintiffs assert that the passage and enforcement of Ordinance No. 1100 constitutes a taking of their property without due process of law in violation of the fifth and fourteenth amendments of the United States Constitution and article I, § 10 of the Missouri constitution. Plaintiffs further assert that defendants' passage of Ordinance No. 1100 and refusal to grant plaintiffs a building permit violated plaintiffs' constitutional rights to procedural and substantive due process.
In order to prevail on their motion for summary judgment, defendants must persuade the Court that the record does not disclose a genuine dispute on a material fact. In order to discharge this burden "it is enough for the [defendants] to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out [this] assertion.... [I]f the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the [plaintiffs'] burden to set forth affirmative evidence and specific facts showing that there is a genuine dispute on the issue. If [plaintiffs] fail to carry that burden, summary judgment should be granted." City of Mt. Pleasant, Iowa v. Assoc. Elec. Coop., 838 F.2d 268, 273-74 (8th Cir.1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). Moreover, there can be "no genuine issue as to any material fact" where, after adequate opportunity for discovery, "a party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In order to prevail on their § 1983 claim plaintiffs must establish that they have been deprived of a federally protected right, privilege or immunity by persons acting under color of state law. See, e.g., Littlefield v. City of Afton, 785 F.2d 596, 600 (8th Cir.1986). Defendants concede that the actions here at issue were taken under color of state law but assert in support of their motion for summary judgment that plaintiffs have failed to show the existence of a constitutional violation, an essential element of a § 1983 claim.

I. The Taking Claim
Plaintiffs contend that the passage and enforcement of Ordinance No. 1100 violated their constitutional rights because it effected a taking of their property. The fifth amendment provides that "private property [shall not] be taken for public use without just compensation." Although land use regulation which is highly restrictive or arbitrary may violate this prohibition, such regulation "does not effect a taking if it `substantially advances legitimate state interests' and does not `den[y] an owner economically viable use of his land.'" Nollan v. Cal. Coastal Comm'n, ___ U.S. ___, 107 S.Ct. 3141, 3146, 97 L.Ed.2d 677 (1987) (quoting Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)).
All claims asserting that land use regulation has effected a taking of property are not automatically reviewable in federal court.[2]See Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 3117-3121, 87 L.Ed.2d 126 (1985). A claim that the application of a zoning ordinance effects a taking is not ripe for constitutional review until the government entity charged with implementing the challenged ordinance has reached a final decision regarding the application of the ordinance to the *993 property in question. Id. 105 S.Ct. at 3117; see also Littlefield, 785 F.2d at 609. In addition, because no taking occurs until the state has refused to pay compensation, a federal court may not consider a takings claim unless the property owner first seeks compensation through the procedures provided by the state for obtaining such relief. Williamson, 105 S.Ct. at 3121 n. 13; see also First English, 107 S.Ct. at 2389 n. 10; Littlefield, 785 F.2d at 609.
Applying the principles announced in Williamson to this case the Court concludes that plaintiffs have not established the existence of a constitutional violation with respect to their takings claim because that claim is premature. Although plaintiffs correctly assert that they are not required to exhaust their administrative remedies before bringing a § 1983 action, they are required to predicate their claim upon a final decision of the governmental body whose action they challenge. Williamson, 105 S.Ct. at 3120. In Williamson the Supreme Court rejected a taking claim as premature because no attempt had been made to obtain variances which would have permitted development of the property. 105 S.Ct. at 3117-19. In this case plaintiffs also failed to seek the variance available to them under the City's general zoning ordinance. See Ordinance No. 1009, art. 8, § 4(3) & art. 10, § 4. The City's refusal to give further consideration to Cardinal's development plans does not alter this Court's determination. In Williamson the Court stated that plaintiffs who have not availed themselves of the opportunity to obtain variances "hardly can maintain that the [rejection of their site plan] was equivalent to a final decision that no variances would be granted." Williamson, 105 S.Ct. at 3119.
Furthermore, plaintiffs' taking claim is not ripe for review because they have not sought compensation from the state by way of an action for inverse condemnation. Id. at 3121. Whether Missouri law provides an inverse condemnation remedy to redress takings allegedly effected by zoning ordinances is less than certain. Compare Harris v. Missouri Conservation Comm'n, 790 F.2d 678, 681 (8th Cir. 1986) (Missouri law provides inverse condemnation action for landowner challenging a state zoning designation) with D & R Pipeline Construction Co. v. Greene County, 630 S.W.2d 236, 238 (Mo.Ct.App. 1982) (Missouri law does not provide an inverse condemnation action for landowner challenging a refusal to rezone).[3] However, in First English Evangelical Lutheran Church v. Los Angeles County, the Supreme Court held that the availability of an inverse condemnation remedy for temporary regulatory takings is mandated by the just compensation clause of the fifth amendment. First English, 107 S.Ct. at 2383. Accordingly, the Court concludes that the inverse condemnation remedy should be available to plaintiffs if they can satisfy the state courts that a taking has occurred. Until Missouri courts have denied plaintiffs their "right to assert such a claim or denied them damages in such an action," plaintiffs' claim of taking without just compensation is not ripe for decision by a federal court. Littlefield, 785 F.2d at 609 (citing Williamson, 105 S.Ct. at 3121-22); see also First English, 107 S.Ct. at 2389 n. 10.

II. The Due Process Claims
Defendants also assert that they are entitled to summary judgment on plaintiffs' procedural and substantive due process claims. Defendants contend that plaintiffs have not shown the existence of a property *994 right, a necessary predicate of the due process violations alleged herein. Plaintiffs, citing Littlefield, argue that applicants for building permits in Missouri have a legitimate claim of entitlement to the issuance of such permits and therefore possess a constitutionally protected property interest in such permits.
The starting point for the analysis of a due process claim, whether substantive due process or procedural due process, is an examination of the constitutional interest which allegedly has been violated. Carolan v. City of Kansas City, 813 F.2d 178, 181 (8th Cir.1987). In order to show the existence of a constitutionally protected property interest in a building permit, the plaintiffs must demonstrate: (1) that the municipality lacks discretion and must issue a building permit to an applicant who complies with the requirements of the ordinance and (2) that they have fulfilled the requirements of the ordinance. Id. (citing Littlefield, 785 F.2d at 601). Both showings must be made before a property interest will be found. Carolan, 813 F.2d at 181.
Under Missouri law the issuance of a building permit is a "ministerial act" which a municipality may not refuse to perform if the requirements of the ordinance have been met. Wolfner v. Board of Adjustment, 672 S.W.2d 147, 150 (Mo.Ct. App.1984). Thus, if plaintiffs can show that they have complied with the requirements of the City's general zoning ordinance, they will have demonstrated the existence of a property interest.
Defendants contend that plaintiffs' site plan proposal does not comply with the requirements of the local zoning ordinance as amended by Ordinance No. 1100 because modular units are not permitted in R-3A zoning districts. Plaintiffs respond that Ordinance No. 1100 is an illegal condition with which they need not comply. Compliance with illegal conditions is not required in order to show the existence of a property interest in a building permit. Littlefield, 785 F.2d at 602; see also Cunningham v. City of Overland, 804 F.2d 1066, 1069 (8th Cir.1986). Thus, if plaintiffs can show that Ordinance No. 1100 is an illegal condition, they will have demonstrated the existence of a property interest.
A property owner challenging the validity of a zoning ordinance must first rebut the presumption of validity which attaches to such enactments. Ohmes v. Lanzarini, 720 S.W.2d 425, 427 (Mo.Ct.App.1986). In addition, the challenger must show that the ordinance cannot be supported as a fairly debatable exercise of the municipality's authority to zone. Id. Given this demanding standard, the Court concludes that plaintiffs have not made a showing sufficient to establish the invalidity of Ordinance No. 1100 and, hence, the existence of a property interest, an element essential to their claim. See Celotex, 106 S.Ct. at 2553 (1986).
Plaintiffs insist that Ordinance No. 1100 is illegal because it exceeds the scope of the City's zoning authority. In support of this contention plaintiffs offer testimony to the effect that modular units are a method of construction and that methods of construction may not be regulated pursuant to the zoning power. Assuming without deciding that such evidence rebuts the presumption of validity, Ordinance No. 1100 is nevertheless supportable as a fairly debatable exercise of the City's authority to zone.
The Missouri Zoning Enabling Act which defines the scope of the City's authority to impose land use restrictions provides in pertinent part:
"For the purpose of promoting health, safety, morals or the general welfare ... [a municipality] is hereby empowered to regulate and restrict ... the location and use of buildings, structures and land for trade, industry, residence or other purposes."
Mo.Rev.Stat. § 89.020(a) (Supp.1988) (emphasis supplied).
Inasmuch as Ordinance No. 1100 operates to restrict the location of modular structures to R-M districts, its validity is supported by the plain language of the statute. Moreover, Missouri courts have previously interpreted § 89.020 to permit the regulation of structural nature and design. *995 See State ex rel. Stoyanoff v. Berkeley, 458 S.W.2d 305 (Mo.1970); City of Kirkwood v. City of Sunset Hills, 589 S.W.2d 31 (Mo.Ct.App.1979).
Plaintiffs further contend that Ordinance No. 1100 is void as an arbitrary and irrational restriction that bears no substantial relationship to the public health and welfare. In support of this contention plaintiffs maintain that modular structures, once completed, are identical to ordinary, stick-built structures in "all significant particulars" and should not therefore be subjected to restrictions not also imposed upon stick-built structures. Plaintiffs' Brief in Opposition to Defendants Motion for Summary Judgment at 16. In response, defendants offer the following justifications for the passage of Ordinance No. 1100: (1) density, (2) fire protection, (3) traffic, (4) parking, (5) aesthetics, (6) maintenance of property values, (7) open space, (8) lot size and (9) unit size. See Defendants' Responses to Plaintiffs' Second Set of Interrogatories, Ques. 13-16. Although the Court finds certain of these justifications more persuasive than others, it may sustain Ordinance No. 1100 as a valid land use regulation if the restriction of modular units to certain zoning districts "is reasonably related to the public need or burden that [such units] create or to which [they] contribute." Nollan v. Cal. Coastal Comm'n, ___ U.S. ___, 107 S.Ct. 3141, 3148, 97 L.Ed.2d 677 (1987). For the following reasons the Court concludes that plaintiffs cannot show the absence of such a relationship.
With respect to two of the asserted justifications for the passage of the Ordinance, the Court notes that the police power encompasses a "broad range of governmental purposes" including aesthetic concerns. See Nollan, 107 S.Ct. at 3147 (citing Agins v. Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (scenic zoning); Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed. 2d 631 (1978) (landmark preservation)). In addition, courts recognize that aesthetic concerns and the maintenance of property values are "inextricably intertwined." Wilkerson v. Murray, 471 S.W.2d 460, 463 (Mo.), cert. denied, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971); City of Independence v. Richards, 666 S.W.2d 1, 6 (Mo.Ct. App.1983). Furthermore, in Wilkerson v. Murray, the Missouri Supreme Court sustained an ordinance restricting mobile homes and trailers to mobile home parks as a valid exercise of zoning authority and concluded that the restriction bore a rational relationship to the public's interests in aesthetics and the maintenance of property values. Wilkerson, 471 S.W.2d at 463. Inasmuch as the Missouri Legislature imposes almost identical regulatory controls upon modular units and mobile homes, the City could rationally conclude that these two types of uses implicate similar police power concerns. See Mo.Rev.Stat. Ch. 700 (1988). Thus the holding in Wilkerson belies plaintiffs' assertion that Ordinance No. 1100 is a wholly irrational enactment with which they need not comply.
Plaintiffs also declare that Ordinance No. 1100 is invalid because Missouri law provides that municipalities may not impose any regulation which affects modular structures. An examination of the statutes in question demonstrates the fallacy of this argument. Missouri law provides that all modular units sold in Missouri must bear the seal of the Missouri Public Service Commission (PSC) evidencing compliance with the PSC standards for such units. Mo.Rev.Stat. § 700.015.3 (1988). If a modular unit meets PSC specifications, no municipality may require such modular unit to comply "with any other building, plumbing, heating or electrical code." Id. at § 700.035. The state regulatory scheme does not preclude municipalities from enacting zoning regulations which restrict the location of modular units to certain areas. Thus, plaintiffs' argument that Ordinance No. 1100 is an illegal regulation of modular units preempted by state law also must fail.
Plaintiffs argue in the alternative that even if Ordinance No. 1100 is a legal condition with which they must comply, they possessed a property interest in their building permit because they have complied *996 with all portions of the City's general zoning ordinance including Ordinance No. 1100. In support, plaintiffs contend that Ordinance No. 1100 merely provides that modular units are a permitted use in R-M districts but does not exclude modular units from R-3A districts. The Court is not persuaded by this construction of the general zoning ordinance and Ordinance No. 1100.
The overall scheme of the City's zoning ordinance is permissive. See, e.g., St. Charles County v. McPeak, 730 S.W.2d 611, 612 (Mo.Ct.App.1987), that is, the ordinance enumerates the uses permitted in specified areas and does not explicitly list prohibited uses.[4] Missouri courts construing such ordinances have long recognized that "any use not expressly permitted in a particular zone [is] automatically excluded therefrom." State ex rel. Barnett v. Sappington, 266 S.W.2d 774, 776 (Mo.Ct.App. 1954). Thus, plaintiffs' interpretation of Ordinance No. 1100 lacks legal support and must be rejected. The Ordinance thus excludes modular units from R-3A districts similar to that in which plaintiffs' Site is found.
On the basis of the foregoing, the Court concludes that plaintiffs have not shown that they have complied with Ordinance No. 1100 or that the Ordinance is an illegal condition with which they need not comply in order to show the existence of a property interest in their building permit. See Littlefield, 785 F.2d at 602. Therefore, plaintiffs have not demonstrated the existence of a property interest, an essential element of their substantive and procedural due process claims. See Carolan, 813 F.2d at 181. Accordingly, there is no genuine dispute of material fact with respect to these claims, and defendants are entitled to summary judgment as a matter of law. See Celotex, 106 S.Ct. at 2553.
Only plaintiffs' claims for violation of their rights under Article I, § 10 of the Missouri constitution remain. Although plaintiffs' state constitutional claims are subject to an exhaustion requirement and administrative review procedures are available to them under Mo.Rev.Stat. § 536.100-.150, plaintiffs have not pursued these remedies. Plaintiffs' failure to pursue the administrative remedies available to them deprives this Court of jurisdiction over their state constitutional claims. See James v. City of Jennings, 735 S.W.2d 188, 190 (Mo.Ct.App.1987). Accordingly, plaintiffs' claims for violation of their rights under the Missouri constitution are dismissed without prejudice.

ORDER AND JUDGMENT
IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendants' motion for summary judgment on plaintiffs' complaint in the above-styled cause of action be and it is granted.
NOTES
[1] Missouri statutory law defines the term "modular unit" as "a factory-fabricated transportable building unit designed to be used by itself or to be incorporated with similar units at a building site into a modular structure to be used for residential, commercial, educational or industrial purposes." Mo.Rev.Stat. § 700.010(7) (1988). It is undisputed that CII's modular units meet this definition and otherwise comply with Missouri regulations pertaining to modular units.
[2] The Supreme Court has held that the fifth amendment as made applicable to the states through the fourteenth amendment requires states to pay compensation for "regulatory takings which are ultimately invalidated by the courts." First English Evangelical Lutheran Church v. Los Angeles County, ___ U.S. ___, 107 S.Ct. 2378, 2383, 96 L.Ed.2d 250 (1987). Despite plaintiffs' assertions to the contrary, the Supreme Court's resolution of this remedial issue did not invalidate the Court's previous rulings which delineate when takings claims are ripe for federal judicial review. See id. 107 S.Ct. at 2389 n. 10.
[3] In D & R Pipeline, the Missouri Court of Appeals refused to allow recovery by way of inverse condemnation to a landowner who alleged that his property, if rezoned, would increase in value sixteen fold. D & R Pipeline, 630 S.W.2d at 238. The court carefully restricted the ruling to the facts of the case before it and did not assert that inverse condemnation would never be appropriate in such a case. Id. at 237. In addition, the court predicated its holding upon a now discredited statement from Agins v. Tiburon, 24 Cal.3d 266, 598 P.2d 25 (1979), aff'd on other grounds, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Id. The Supreme Court's holding in First English specifically rejects that statement and thus calls the validity of the decision in D & R Pipeline into question. See First English, 107 S.Ct. at 2383.
[4] Plaintiffs point out that Article 5, § 2 of Ordinance No. 1009, which contains the regulations for Single Family Residential Districts, departs from this pattern by explicitly prohibiting mobile homes in such districts. The Court is not willing to ignore the obvious implications of the Ordinance's overall design on the basis of such a minor deviation.