**JACOBS, VISCONSI & JACOBS CO., Richard A. Armstrong and Betty J. Grisham, Plaintiffs,**

v.

**CITY OF LAWRENCE, KANSAS, Robert J. Schumm, Michael Amyx, Dennis D. Constance, Sandra K. Praeger, Thomas M. Rundle, Lawrence–Douglas County Metropolitan Planning Commission, and Does 1 Through 100, Defendants.**

Civ. A. No. 88–2249–S.

United States District Court,
D. Kansas.

March 6, 1989.

Neil R. Shortlidge, Freilich, Leitner, Carlisle and Shortlidge, Kansas City, Mo., John A. Emerson, Barber, Emerson, Springer, Zinn and Murray, Lawrence, Kan., for plaintiffs.

Richard F. Babcock/Barbara Baran, Ross & Hardies, Chicago, Ill., Gerald L. Cooley, Allen, Cooley & Allen, Lawrence, Kan., for defendants except Does 1–100.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion to dismiss each and all

counts of plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, defendants move the court to strike the complaint. Also, defendants move the court to abstain from exercising jurisdiction. Plaintiffs Richard A. Armstrong and Betty J. Grisham are property owners in the City of Lawrence, Kansas. Plaintiff Jacobs, Visconsi & Jacobs Company ("JVJ") holds an option on these properties. This lawsuit arises out of the Lawrence city commission's denial of plaintiffs' rezoning application on April 12, 1988. Plaintiffs sought to have their properties zoned a commercial designation to allow development of a suburban shopping mall.

In considering defendants' motion to dismiss, the court will accept the facts as set out in plaintiffs' extensive complaint. Plaintiffs Armstrong and Grisham are owners of 61.41 acres of real property located in Lawrence, Kansas. The property is located on the southern edge of the city. Plaintiff JVJ is an optionholder on this property. JVJ wished to develop a suburban shopping mall on the property. In 1979, plaintiffs filed an application with the city to rezone the property from RS–1 (residential) and FP (flood plain) districts to C–4 district (general commercial). After review, the city's planning commission recommended the application be denied. Later in 1981, the city commission adopted the planning commission's recommendations and denied this application. In 1986, the portion of the properties zoned FP was rezoned to a district RS–1.

On December 16, 1981, the comprehensive downtown plan was approved by the planning commission. The planning commission purported to make the comprehensive downtown plan an official amendment to Plan '95, the city's comprehensive development plan, on December 15, 1982. The stated policy of the comprehensive downtown plan is to eliminate or substantially reduce competition for downtown business interest. The downtown plan intended to reinforce the policies of Plan '95, which supported the central business district (downtown) as the only retail center in Lawrence.

From October, 1984 through March, 1987, plaintiff JVJ was involved in a joint venture with Town Center Venture Corporation to develop a downtown shopping mall. On April 7, 1987, an advisory election was held by the city in which the voters of Lawrence rejected the downtown mall concept.

On May 19, 1987, the city commission appointed a Downtown Improvement Committee ("DIC") consisting of representatives from different organizations and at-large members. Among the persons appointed by the city commission to serve on the DIC were Commissioner Dennis Constance and two members of the planning commission. The purpose of the DIC was to provide assistance and advice to the city commission on downtown development issues.

On July 13, 1987, JVJ filed another application to rezone the Armstrong and Grisham property from an RS–1 district to a C–4 district to accommodate a suburban shopping mall. This application led to the present litigation. Also, on the same date, another developer, Warmack & Company, filed an application to rezone a 152–acre site located in Douglas County, just south of the City of Lawrence, to develop a shopping mall. Also, at that time, another application was pending before the city to rezone certain land to allow for shopping mall development (the Collister application). On August 8, 1987, the DIC reached a consensus that the three suburban mall rezoning proposals threatened the downtown's role as the city's retail core and that the solution to the problem was to pursue a large-scale retail development downtown.

In the fall of 1987, the planning commission held extensive public hearings on the three suburban mall zoning applications. On December 16, 1987, the planning commission began deliberations on the three suburban mall rezoning applications.

On February 2, 1988, the DIC presented its final report to the city commission. The DIC perceived a suburban shopping center to be a competitive threat to the downtown business interest. On February 9, 1988,

the city commission voted four to one to spend $47,450 to hire consultants to help the DIC's project of obtaining downtown development.

At a meeting on February 22, 1988, the planning commission reviewed the findings of fact prepared by the planning staff and voted unanimously to recommend denial of the Collister application. Following this vote, the planning commission began to review findings of fact prepared by the planning staff on the JVJ application. On March 21, 1988, the planning commission voted unanimously to recommend denial of the JVJ application and made its findings of fact. One planning commissioner stated that the threat to the existing downtown retail district was an overriding factor in the recommendation.

Under a cover letter dated April 6, 1988, attorneys for JVJ filed a request for disqualification, suggesting that one or more members of the city commission should disqualify themselves from participating in hearings, deliberations, and the decision of the JVJ rezoning application, for reasons of bias or prejudice. Commissioner Schumm is the proprietor of four businesses located in downtown Lawrence. Commissioner Amyx is the owner of real estate located in downtown Lawrence and is the proprietor of a business, Amyx Barber Shop, located in downtown Lawrence. Also, Commissioner Constance was an active member of the DIC, which pursued the interest of downtown development.

On April 12, 1988, the city commission met and considered the JVJ application. All commissioners indicated that they would not disqualify themselves. The findings of the planning commission, and evidence used by the planning commission in making these findings, were presented to the city commission. The city commission voted unanimously to accept the planning commission's recommendation to deny the rezoning application and adopted the planning commission's findings of fact. This denial of the rezoning application precluded plaintiffs' attempts for commercial development on their land. On May 10, 1988, plaintiffs filed this suit in federal court.

In the present suit, plaintiffs plead a five-count complaint. The first four counts are actions under 42 U.S.C. § 1983, alleging deprivations of constitutional rights. In count I, plaintiffs allege the deprivation of procedural due process. Plaintiffs contend that the city commissioners prejudged the merits of JVJ's rezoning application and because of their prejudice, they were incapable of sitting as impartial decisionmakers at the quasi-judicial rezoning hearing. In count II, plaintiffs allege deprivation of equal protection of the laws. Plaintiffs contend that the city had a policy of restricting development to downtown projects to eliminate competition for downtown businesses. Plaintiffs contend this policy discriminated against competitors seeking to locate outside the downtown area. In count III, plaintiffs allege deprivation of substantive due process. Plaintiffs contend that the findings of fact made by the planning commission and adopted by the city commission were not supported by substantial evidence. Therefore, plaintiffs allege the denial of JVJ's rezoning application was arbitrary, capricious and unreasonable. In count IV, plaintiffs allege that defendants' actions amounted to a taking of their property without due process. Finally, the fifth count of plaintiffs' complaint alleges a violation of federal antitrust law. Plaintiffs contend that defendants engaged in a conspiracy to prevent plaintiffs from developing a suburban mall. Plaintiffs allege that defendants took this action to prevent competition with downtown businesses. Defendants move to dismiss each of these counts for various reasons. The court will proceed and deal with each count individually.

The court may not dismiss a cause of action for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Mangels v. Pena*, 789 F.2d 836, 837 (10th Cir.1986). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810,

813 (10th Cir.1984). The court must view all reasonable inferences in favor of the plaintiff and the pleadings must be liberally construed. *Id.* The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### A. *Procedural Due Process Claim.*

Defendants argue that plaintiffs failed to state a claim for deprivation of procedural due process, because plaintiffs have failed to show the existence of any constitutionally protected property interest. Defendants argue that plaintiffs have no such interest in either the requested commercial zoning classification or the rezoning process itself. In contrast, plaintiffs argue that as property owners under Kansas law, they have a statutory right to submit an application for rezoning. Further, plaintiffs argue that Kansas courts impose substantive standards for reviewing zoning applications and this process is quasi-judicial. Thus, plaintiffs argue Kansas law creates a protected property interest, a claim of entitlement, in the rezoning application process.

■ To maintain a section 1983 claim of deprivation of procedural due process under the Fourteenth Amendment of the United States Constitution, plaintiff must allege the deprivation of some property or liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). To determine whether due process requirements even apply, the court must look to the nature of the interest at stake. *Id.* at 570–71, 92 S.Ct. at 2705–06. The question presented is whether plaintiffs have a constitutionally protected property interest in either their application for commercial zoning classification, or the rezoning process itself.

Property interests are determined and created by state laws that "secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. at 2709. "It is the nature of the *interest at stake* in the proceeding, however, and not the nature of the proceeding that determines whether constitutional requirements of due process apply." *Contra Costa Theatre, Inc. v. City of Concord,* 511 F.Supp. 87, 89 (N.D.Cal.1980) (citing *Roth,* 480 U.S. at 571, 92 S.Ct. at 2706), *aff'd,* 686 F.2d 798 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). (emphasis added).

The interest at stake in this present case is plaintiffs' application, or desire, to have their property rezoned to C–4 (a commercial zone classification). The Kansas Supreme Court has held that a property owner possesses no vested right in an existing zoning classification. *Houston v. Board of City Comm'rs,* 218 Kan. 323, 333, 543 P.2d 1010, 1019 (1975). Thus, it is equally clear that a property owner has no claim of entitlement or vested right in a desired reclassification of their property. *See id.* at 332–33, 543 P.2d at 1019 (Kansas law "does not protect either existing zoning or merely anticipated uses."). Plaintiffs must have a legitimate claim of entitlement to a property interest. A mere abstract need or desire is insufficient. *Gunkel v. City of Emporia, Ks.,* 634 F.Supp. 345, 348 (D.Kan.1986), (citing *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709), *aff'd,* 835 F.2d 1302 (10th Cir.1987).

Here, plaintiffs' property was zoned residential. Plaintiffs desired a commercial zoning classification of their property. Their interest in the zoning classification is not considered a property interest under Kansas law. The court finds that plaintiffs had no property interest in a commercial zoning classification for their property. Therefore, this interest is insufficient to maintain a federal constitutional due process claim.

Plaintiffs also assert a claim of entitlement arising from the quasi-judicial proceeding required by state law in rezoning hearings. Plaintiffs argue that state law restricts the commissioners' discretion in deciding rezoning issues. Thus, plaintiffs contend that the protection of procedural due process attaches to plaintiffs interest in the proceedings.

Some courts have recognized that a "claim of entitlement can arise from proceedings established in statutes or regulations adopted by states or political subdivisions." *Littlefield v. City of Afton,* 785 F.2d 596, 600 (8th Cir.1986) (citing *Parks v. Watson,* 716 F.2d 646, 656–57 (9th Cir. 1983)). A claim of entitlement, however, can be created only if the procedural requirements "were intended to operate as a 'significant, substantive restriction'" on the decisionmakers' actions. *Parks v. Watson,* 716 F.2d 646, 657 (9th Cir.1983). In *Parks,* the city was *required,* under the statutory process, to vacate a street if three conditions were shown by the petitioner. *See also Littlefield,* 785 F.2d at 602 (Since state law and a city ordinance *required* the city to issue a building permit on applicant's compliance with conditions set out in the ordinance, a claim of entitlement exists and a property interest in building permit exists once the conditions were met.).

The plaintiffs' problem in the present case is that the city commission was not required to grant plaintiffs' rezoning application. Plaintiffs argue that the Kansas Supreme Court in *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978), imposed substantive limitations on zoning bodies' discretion. Plaintiffs misread *Golden.* In *Golden,* the court simply provided "factors" that a zoning board might consider in reaching its decision regarding a rezoning application. *Golden,* 224 Kan. at 599, 584 P.2d at 136; *see also K–S Center Co. v. City of Kansas City,* 238 Kan. 482, 495, 712 P.2d 1186, 1196 (1986) ("This court's purpose in *suggesting* zoning bodies apply the *Golden* factors was to aid in more precise definition and application of the 'reasonableness' standard.") (emphasis added).

Kansas law does not mandate approval or denial of zoning requests when an applicant complies with certain conditions. Quite to the contrary, zoning bodies are granted wide discretion in reaching these decisions. *See Combined Investment Co. v. Board of Butler County Comm'rs,* 227 Kan. 17, 28, 605 P.2d 533, 543 (1980) ("The local zoning authority ... has the right to

prescribe, change or refuse to change, zoning."). The only limit on the zoning body's authority is that their decision must be reasonable and not arbitrary. *See Golden,* 224 Kan. at 599, 584 P.2d at 136; *Gaslight Villa, Inc. v. City of Lansing,* 213 Kan. 862, syl. ¶ 3, 518 P.2d 410, 411 (1974). Given the broad discretion zoning bodies are granted and the minimal limitation state law places on the exercise of that discretion, this court cannot find that state law placed a "significant substantive restriction" on the city commission in deciding whether to grant plaintiffs' zoning request. Therefore, plaintiffs cannot assert a claim of entitlement in the rezoning process.

Furthermore, the fact that Kansas courts consider the rezoning process to be quasi-judicial does not create any federally protected constitutional right in the process. The characterization may require closer scrutiny of the process by a reviewing state court or impose additional procedures on the hearing. The quasi-judicial nature of the process does not, however, create a property interest or a claim of entitlement in the rezoning process. *See Contra Costa Theatre Co.,* 511 F.Supp. at 89 (It is the nature of the interest at stake, *not the nature of the proceeding,* that determines whether due process protections apply.) (emphasis added); *see also Shelton v. City of College Station,* 780 F.2d 475, 482 (5th Cir.) (en banc), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986) (The quasi-judicial nature of the zoning decisions does not by itself trigger a procedural due process inquiry or create property rights.).

Plaintiffs' complaint about the proceeding in their rezoning request concerns the reasonableness of the commissioners' decision and whether state procedures were followed. These are complaints best heard by a state court. They are not claims rising to the level of constitutional protection under the due process clause of the fourteenth amendment. The court agrees with the court in *Contra Costa Theatre,* which stated, "[a]lleged violations of 'rights' that arise exclusively out of a failure to comply with the procedures provided

by city charter, ordinances and regulations, do not sustain a federal constitutional claim." *Contra Costa Theatre*, 511 F.Supp. at 89.

The court finds that plaintiffs cannot allege a property interest in either a commercial zoning classification or the zoning application process. Plaintiffs fail to meet this prerequisite to the cause of action for procedural due process deprivation. Thus, the court will grant defendants' motion to dismiss count I of plaintiffs' complaint.

### B. *The Equal Protection Claim.*

■ In count II of their complaint, plaintiffs claim that the city commission and the city planning commission deprived them of the equal protection of the laws. Plaintiffs allege that the city's adoption and application of Plan '95, the city's comprehensive land use plan, differentiated between developers who seek to develop shopping malls at suburban locations and those seeking to develop in the downtown area. Plaintiffs contend that this policy by the city violates the fourteenth amendment's equal protection clause.

An equal protection violation occurs when the government treats someone differently than those similarly situated. *See Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir.1988). The court, however, finds that plaintiffs have not alleged the existence of two identifiable groups who are treated differently. Plaintiffs attempt to show the creation of such groups on the basis of individual decisions made by developers, not government action. Under the comprehensive development plan, the city treats all developers the same. It is simply that developers wishing to develop suburban malls will not get the desired zoning they request, while a developer deciding to develop downtown may not face this obstacle. There is no difference in the treatment of developers in general. A developer's individual decision, however, may determine its likelihood of obtaining commercially zoned land. Also, the individual plaintiffs do not allege, and cannot allege, that they are treated any differently than adjacent, similarly situated land owners.

Therefore, the court finds that no government action has been alleged that treats similarly situated persons differently. Thus, plaintiffs cannot maintain an equal protection claim.

■ Even if the developers desiring a suburban mall and developers desiring downtown development were considered to constitute two distinct classes created by government action, plaintiffs' equal protection claim would still fail. Plaintiffs appear to argue that a form of enhanced rational basis review (or rational basis review with a bite) should apply to their equal protection claim. *See City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed. 2d 313 (1985). The court disagrees.

The foundation of equal protection analysis is found in footnote four and its accompanying text found in *United States v. Carolene Products Co.*, 304 U.S. 144, 152, and n. 4, 58 S.Ct. 778, 783, and n. 4, 82 L.Ed. 1234 (1938). Under this analysis, regulation affecting ordinary commercial transactions and activity is not unconstitutional unless there can be no assumption that it rests on a rational basis. *Id.* at 152, 58 S.Ct. at 783; *see also Racetrac Petroleum, Inc. v. Prince George's County*, 601 F.Supp. 892, 913 (D.Md.1985), *aff'd*, 786 F.2d 202 (4th Cir.1986) ("The standard for judging the constitutionality of local economic regulation is the 'rational basis' test which requires only that the regulation be rationally related to a legitimate state interest."); *Cudahy Co. v. Ragnar Benson, Inc.*, 514 F.Supp. 1212, 1217 (D.Colo.1981) ("When local economic regulation that does not burden fundamental rights or is not based upon inherently suspect distinctions is challenged on equal protection grounds, this Court 'may not sit as a super legislature to judge the wisdom or desirability of the legislature's policy determinations ...', it is only the *invidious* discrimination, the *wholly* arbitrary act, which cannot stand consistently with the Fourteenth Amendment.' ") (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976)).

Justice Marshall accurately summarized the great latitude given the government to discriminate regarding economic and commercial matters. In *City of Cleburne*, Justice Marshall states "[t]he structure of economic and commercial life is a matter of political compromise, not constitutional principle, and no norm of equality requires that there be as many opticians as optometrists *or new businesses as old.*" *City of Cleburne*, 473 U.S. at 471, 105 S.Ct. at 3271, (Marshall, J., concurring) (citing *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) and *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)) (emphasis added).

The enhanced rational basis review, which plaintiffs wish to apply to their claim, is available only when the classification created by the government involves special social, cultural or political conditions warranting the judiciary's heightened scrutiny. *See City of Cleburne*, 473 U.S. at 472, n. 24, 105 S.Ct. at 3271, n. 24 (Marshall, J., concurring) (Marshall gives an excellent explanation on when heightened scrutiny is appropriate). In *City of Cleburne*, the Court applied heightened scrutiny in reviewing a city's action that treated the mentally handicapped differently than other persons. *See also Knutzen v. Eben Ezer Lutheran Housing Center*, 815 F.2d 1343, 1354 (10th Cir.1987) (enhanced scrutiny applied when physically and mentally handicapped persons treated differently under government regulation); *Brennan v. Stewart*, 834 F.2d 1248 (enhanced rational basis test applied in this case in which the plaintiff was visually impaired). In the present case, the only classification, if any, was between two types of developers. The city's action was purely an economic decision. The court finds no special conditions regarding suburban mall developers that warrants heightened scrutiny in reviewing the city's actions.

The plaintiffs, in their complaint, contend that defendants treated them differently to protect the city's central business district and businesses located therein. Thus, the city decided to encourage downtown devel-opment and discourage and prevent suburban retail development. The court finds that this reason, alone, for the city's policy decision is legitimate. The city has a legitimate interest in supporting existing business and preserving the vitality of its downtown area. Moreover, a city can rationally decide to control growth and land use in its boundaries. This segregation of land uses is the very purpose of zoning ordinances.

Even if the court believed that the city's actions created two classes of developers, the court can envision rational and legitimate justifications for the city's decision not to allow plaintiffs to develop a suburban mall. Therefore, plaintiffs' equal protection claim should be dismissed. *See Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921, 936 (5th Cir.1988) (relying on *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978)) (If the court can conceive of a legitimate purpose rationally related to the government's classification, dismissal is appropriate.); *see also Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886, 892–83 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988). Thus, the court will dismiss plaintiffs' equal protection claim.

### C. *The Substantive Due Process Claim.*

██ In count III of their complaint, plaintiffs claim that defendants deprived them of substantive due process. The due process clause of the fourteenth amendment provides two types of constitutional protection. One type is procedural due process, which is discussed above in part A of this memorandum. Procedural due process protects individuals against deprivation of liberty or property rights without constitutionally adequate procedures. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). The other type of due process protection is substantive due process. Substantive due process protects individuals against government acts that violate due process, regardless of the procedures used to implement the government's acts. *Ni-*

*shiyama v. Dickson County, Tennessee,* 814 F.2d 277, 281 (6th Cir.1987).

For an individual to assert either of these due process protections, the interest for which the individual wishes protection must be a liberty or property interest. *Michigan Environmental Resources Assoc., Inc. v. County of Macomb,* 669 F.Supp. 158, 160 (E.D.Mich.1987); *see also Carolan v. City of Kansas City, Mo.,* 813 F.2d 178, 181 (8th Cir.1987); *Wintercreek Apartments v. City of St. Peters,* 682 F.Supp. 989, 994 (E.D.Mo.1988). Therefore, plaintiffs must show the existence of a constitutionally protected property interest to maintain their substantive due process claim.

As determined above in part A, plaintiffs fail to show an interest that is deserving of constitutional protection. This failure prevents plaintiffs from maintaining a substantive due process claim, just as it prohibited their procedural due process claim. Since plaintiffs have been deprived of no constitutionally protected property interest, the court will grant defendants' motion to dismiss count III of plaintiffs' complaint, the substantive due process claim.

**D.** *The Taking Claim.*

Plaintiffs have voluntarily moved to dismiss the fourth claim of their complaint, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. In light of a recent tenth circuit decision, plaintiffs' claim is not ripe to present a fifth amendment taking claim. Therefore, the court will grant plaintiffs' motion to voluntarily dismiss this claim. Plaintiffs' counsel is commended for bringing this recent tenth circuit opinion to the court's attention.

**E.** *The Sherman Act Claims.*

■ Defendants move to dismiss count V of plaintiffs' complaint, the antitrust claim. Defendants claim immunity from the antitrust claim under the state action doctrine. Defendants contend that the action challenged by plaintiffs was performed pursuant to authority clearly articulated by state statute, and thus they are entitled to immunity from antitrust litigation regarding this action. Furthermore, defendants argue that the state legislature contemplated anticompetitive regulation when it enacted the Zoning Enabling Act, K.S.A. 12–701 *et seq.* and the Kansas Redevelopment of Central Business District Areas Act, K.S.A. 12–1770 *et seq.,* and the Urban Renewal Law, K.S.A. 17–4742 *et seq.*

In response, plaintiffs argue that the Kansas legislature, in enacting the zoning enabling statutes, did not contemplate the type of anticompetitive action complained of in this case. Thus, they contend the state action immunity doctrine is not applicable to defendants. Also, plaintiffs argue that the Kansas Urban Renewal Act has no bearing on this case. Finally, plaintiffs argue that even if state action immunity is available to defendants, defendants have abused their statutory authority and thus are not entitled to the immunity. In reply, defendants contend that state action immunity is not destroyed by plaintiffs' allegations of defendants' conspiracy or abuse.

The court must first determine whether defendants are entitled to state action immunity. A two step analysis has been developed regarding this determination. *See Russell v. City of Kansas City, Ks.,* 690 F.Supp. 947, 953 (D.Kan.1988) (citing *Scott v. City of Sioux City, Iowa,* 736 F.2d 1207, 1211 (8th Cir.1984). First, the court must determine whether the state legislature authorized the city's challenged activities. Second, the court must decide whether the legislature's authorization contemplated the resulting anticompetitive effects, or whether the challenged activities were a reasonably foreseeable consequence of the authorization. *See Russell,* 690 F.Supp. at 953.

Applying the analysis to the facts as set out in plaintiffs' complaint, the court finds defendants are entitled to state action immunity. The activities that plaintiffs challenge are the defendants' adoption of the comprehensive downtown plan (Plan '95) and the defendants' denial of plaintiffs' rezoning application. (*See* Plaintiffs' Response at p. 71). These activities are specifically authorized by state legislation. *See* K.S.A. 12–707 ("The governing body of any city is hereby authorized by ordinance

to divide such city into zones or districts, and regulate and restrict the location and use of buildings and the uses of the land within each district or zone.") and K.S.A. 12–704 ("The planning commission is hereby authorized to make or cause to be made a comprehensive plan for the development of such city....."). These statutes clearly articulate the defendants' actions now challenged by plaintiffs.

The next question is whether the state legislature contemplated the anticompetitive effect of the defendants' zoning actions challenged in this case. The court easily finds that the alleged anticompetitive effects of defendants' actions were a reasonably foreseen consequence of the zoning authorization from the state. The court agrees with the logical conclusions made in the seventh and ninth circuits. In a case in which a developer alleged that three local government units conspired to deny special use permits, the Seventh Circuit Court of Appeals held that state action immunity applied to local governments because of the state's zoning enabling act. *LaSalle Nat'l Bank of Chicago v. DuPage County,* 777 F.2d 377, 383 (7th Cir.1985). The court stated:

> By definition zoning is an approach to land use which engrafts upon laissez-faire capitalism a regulatory scheme controlled by political institutions. As one commentator puts it, the "grant of zoning power necessarily reflects a state determination that regulation should displace market competition otherwise protected by antitrust laws."

*Id.* (quoting Areeda, *Antitrust Laws,* p. 69, ¶ 2127(d) (1982 Supp.)).

Similarly, the Ninth Circuit Court of Appeals has found that the power to zone and rezone necessarily has foreseeable anticompetitive effects. *See Boone v. Redevelopment Agency of San Jose,* 841 F.2d 886, 890 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988); *see also Racetrac Petroleum v. Prince George's County,* 601 F.Supp. 892, 906 (D.Md.1985), *aff'd,* 786 F.2d 202 (4th Cir. 1986). The court agrees that anticompetitive effects, like those complained of in the present case, were foreseeable consequences of the Kansas Zoning Enabling Act. Therefore, the court finds that defendants are entitled to state action immunity from federal antitrust claims.

 Even though the defendants are entitled to assert state action immunity, plaintiffs further contend that the immunity does not extend to defendants if they exceed or abuse their zoning authority. Plaintiffs allege that three commissioners who voted to deny the rezoning application had ulterior, self-dealing reasons for denying the application. According to plaintiffs' complaint, defendant Constance conspired with others to prevent the development of a suburban mall. Defendant Constance had earlier served on the downtown improvement committee, which had petitioned the city to deny plaintiffs' request. Also, defendants Schumm and Amyx had downtown businesses and property interests at the time they voted to deny plaintiffs' request. Plaintiffs contend that because of the alleged self-dealing reasons behind defendants' decision, the court is precluded from extending state action immunity to the defendants.

The court finds that once it is established that defendants are entitled to state action immunity, any further inquiry into the motives or reasons for defendants' decision is irrelevant. The foundation of the state action immunity in antitrust cases is federalism, the respect for the sovereignty of the states. *See Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Once the court establishes that the commissioners acted pursuant to state authority, it is not necessary to determine whether they had ulterior motives in pursuing their actions.

In *Llewellyn v. Crothers,* 765 F.2d 769, 774 (9th Cir.1985), the Ninth Circuit Court of Appeals confronted an argument similar to the one plaintiffs make here. The ninth circuit stated "[t]he availability of *Parker* [state action] immunity, however, does not depend on the subjective motivations of the individual actors, but rather on the satisfaction of the objective standards set forth in *Parker* and authorities which interpret

it." *Id.; see also Hancock Industries v. Schaeffer,* 811 F.2d 225, 234 (3d Cir.1987) ("[T]he subjective motive of public decision-makers is irrelevant to state antitrust immunity analysis."). For a thorough analysis of the reasons supporting this conclusion, *see Hancock,* 811 F.2d at 234–36.

The court believes that denying defendants immunity from antitrust litigation would have the very effect that the immunity doctrine was fashioned to prevent. The fundamental policy of the state action doctrine is to immunize state action from federal antitrust scrutiny. *Hallie v. City of Eau Claire,* 471 U.S. 34, 44 n. 7, 105 S.Ct. 1713, 1719 n. 7, 85 L.Ed.2d 24 (1985). To allow such scrutiny when it is alleged that the state or a local decisionmakers have exceeded or abused their authority would defeat the purpose of the state action doctrine. It is best to leave the scrutiny of such misconduct to the state courts. *See* Areeda, *Antitrust Immunity for State Action after Lafayette,* 95 Harv.L. Rev. 435, 449–50 (1981), *quoted in Llewellyn,* 765 F.2d at 774.

Therefore, the fact that some of the decisionmaking defendants may have denied plaintiffs' rezoning application because of their own financial interest in or personal preference for downtown development does not destroy the immunity granted to actions taken pursuant to state authority. Any irregularity in the process or errors in decisionmaking may be redressed in plaintiffs' state court action. Thus, the court will dismiss plaintiff's federal antitrust cause of action.

F. *Other Motions.*

Defendant Constance argues that he is entitled to qualified immunity regarding plaintiff's section 1983 claims. Defendant Constance moves that these claims be dismissed against him in his individual capacity. Also, defendant planning commission argues that it lacks the capacity to be sued. Therefore, it moves that all claims against it be dismissed. Finally, defendants move that the court abstain from exercising jurisdiction, since a similar suit is pending in state court. Since the court will dismiss all

of plaintiffs' claims for the reasons set forth above, these remaining motions are rendered moot.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion to dismiss each and all of plaintiffs' claims is granted.