**CLASSIC COMMUNICATIONS, INC.;
Classic Telephone, Inc.; and Classic
Cable, Inc., Plaintiffs,**

v.

**RURAL TELEPHONE SERVICE CO.,
INC.; Vision Plus, Inc.; Larry E. Sevier;
Merlin Dennis; Barney Hickert; F.C.
Brungardt; Douglas Ziegler; Charley
Minium; Marion Otter; Glenn Lambert;
Robert E. McCall; Shane Brady; Ken-**

neth Clark; City of Hill City, Kansas; City of Bogue, Kansas; City of Quinter, Kansas; City of Morland, Kansas; City of Norcatur, Kansas; City of Gorham, Kansas; City of Damar, Kansas; City of Palco, Kansas; and City of Logan, Kansas, Defendants.

Civil Action No. 96–2166–DES.

United States District Court,
D. Kansas.

Dec. 3, 1996.

See also, 956 F.Supp. 910.

Victor A. Davis, Jr., David P. Troup, Weary, Davis, Henry, Struebing & Troup, Junction City, KS, Gordon D. Gee, Paul G. Schepers, Rachel H. Baker, Susan S. Goldammer, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, Cary Ferchill, Mark D. Goranson, Brian F. Antweil, Winstead, Sechrest & Minick, P.A., Austin, TX, for Classic Communications, Inc., Classic Telephone, Inc. and Classic Cable, Inc.

Donald D. Barry, Anthony S. Barry, Barry & Barry, Topeka, KS, J. Eugene Balloun, Timothy M. O'Brien, Robert D. Grossman, David A. Rameden, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Rural Telephone Service Company, Inc., Vision Plus, Inc., Larry E. Sevier, Merlin Dennis, Barney Hickert, F.C. Brungardt, Douglas Ziegler, Charley Minium, Marion Otter, Glenn Lambert, Robert E. McCall and Shane Brady.

Allen Shelton, Shelton Law Firm, P.A., Oberlin, KS, for Kenneth Clark.

William B. Elliott, Hill City, KS, for City of Hill City, Kansas.

Allen G. Glendenning, Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., Great Bend, KS, for City of Bogue, Kansas.

S. Philip Stover, Quinter, KS, for City of Quinter, Kansas.

Tony A. Potter, Hill City, KS, for City of Morland, Kansas.

Steven W. Hirsch, Hirsch & Pratt, Oberlin, KS, for City of Norcatur, Kansas.

Kenneth L. Cole, Woelk & Cole, Russell, KS, for City of Gorham, Kansas.

Terry L. Cikanek, Krysl & Cikanek, Stockton, KS, Craig C. Blumreich, Gehrt & Roberts, Chartered, Topeka, KS, for City of Damar, Kansas and City of Palco, Kansas.

Karen L. Griffiths, R. Douglas Sebelius, Sebelius & Griffiths, Norton, KS, for City of Logan, Kansas.

### *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This matter is before the court on the motions to dismiss of defendants City of Palco (Doc. 43), City of Damar (Doc. 44), City of Morland (Doc. 45), City of Norcatur (Doc. 48), and City of Gorham (Doc. 50). For the reasons set forth below, defendants' motions are granted in part and denied in part.

## I. BACKGROUND

The following facts are uncontroverted or, where controverted, construed in a manner most favorable to the plaintiffs as the non-moving parties.

In 1992, Classic Communications, Inc. initiated efforts to expand its telecommunications business into western Kansas. Classic Communications' telephone subsidiary, Classic Telephone, Inc., attempted to purchase telephone exchange systems in the region and its cable television subsidiary, Classic Cable, Inc., attempted to expand its cable television service into the Cities of Palco, Damar, Morland, Norcatur, and Gorham (collectively the "Cable Cities" or "Cities"). In each of the Cable Cities, Rural Telephone Service Co., Inc. ("Rural"), or its wholly-owned subsidiary, Vision Plus, Inc. ("Vision"), was already operating a local telephone exchange or a cable television system, or both.

In order to operate a cable television system in Kansas, a business is required to obtain a franchise from the city to be serviced in order to use streets and rights-of-way. Classic Cable applied for a competitive cable television franchise in each of the Cable Cities, and each city denied Classic Cable's application without, according to plaintiffs, providing any valid reason.

Classic Cable subsequently notified the Cable Cities that, under 47 U.S.C. § 541 of the 1992 Cable Act, they were not permitted to deny a cable franchise for competitive reasons and Classic Cable requested additional information in an effort to find a "legitimate explanation" for the denial. According to plaintiffs, none of the Cable Cities responded with a legitimate explanation and all continue to refuse to grant franchises to Classic Cable.

Plaintiffs contend that these denials are a result of a conspiracy between Rural and the Cable Cities to deny Classic the opportunity to compete in the provision of telecommunications services.

## II. RULE 12(B)(6) MOTION TO DISMISS STANDARD

■■■ The court may not dismiss a cause of action for failure to state a claim under Fed.R.Civ.P. Rule 12(b)(6) unless it appears beyond doubt that the claimant can prove no set of facts supporting its claim which would entitle it to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the nonmovant. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir.1991); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support its claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).[1]

■ A motion to dismiss is appropriate where allegations "clearly indicate the existence of an affirmative defense." 5A C. WRIGHT, & A. MILLER, *Federal Practice and Procedure* § 1357. In such cases, "the complaint is said to have a built-in defense and is essentially self-defeating." *Id.* Professors Wright and Miller note that privilege and immunity are examples of built-in affirmative defenses that are properly considered on a motion to dismiss. *Id.*

## III. DISCUSSION

### A. Standing

■■■ The Cable Cities move to dismiss plaintiffs' action for lack of standing. A party meets the minimum constitutional requirements for standing when (1) it has suffered

---

1. Plaintiffs contend that motions to dismiss antitrust claims should be more disfavored than motions to dismiss other types of claims. The court disagrees. Under present law, motions to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), including those directed at antitrust claims, are greatly disfavored by the federal courts. *NL Indus., Inc. v. Gulf & Western Indus.*, 650 F.Supp. 1115, 1122 (D.Kan.1986). Enhancing the 12(b)(6) movant's already difficult burden would accomplish little more than transforming the dismissal into an impractical formality, and would virtually eliminate a procedural tool, which, when used cautiously, can promote the liberal rules of pleading and protect the interests of justice.

an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2135–37, 119 L.Ed.2d 351 (1992); *Skrzypczak v. Kauger,* 92 F.3d 1050, 1052–53 (10th Cir.1996). However, a plaintiff need only support the elements of standing "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim....'" *Id.* at 561, 112 S.Ct. at 2137 (quoting *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990)).

■ The Cable Cities appear to contest the second, or causation, prong of the *Lujan* standing requirements. The crux of their argument is since they did not deal with all of the plaintiff corporations, not all of the plaintiff corporations can trace their alleged injuries to the challenged actions of the Cable Cities, and thus not all of the plaintiffs can have standing.

The court agrees that Classic Telephone's connection to the Cable Cities is negligible. According to plaintiffs' first amended complaint (Doc. 89), Classic Telephone sought no franchises from the Cable Cities. Nor did Classic Telephone conduct any other form of business with the Cable Cities. The court is not convinced, in light of plaintiffs' factual allegations and all reasonable inferences drawn therefrom, that plaintiffs can establish a causal connection between Classic Telephone's injury and the Cable Cities' challenged conduct. Accordingly, the court determines that Classic Telephone does not have standing to sue the Cable Cities.

■ Classic Cable, on the other hand, does have standing. According to plaintiffs' first amended complaint, Classic Cable was the particular Classic corporation that attempted to obtain cable franchises from the Cable Cities. Classic Cable was also the corporation intended by plaintiffs to operate the cable systems should the franchises have been granted. The Supreme Court has noted that if "the plaintiff is [itself] an object of the [challenged] action ... there is ordinarily little question that the action or inaction has caused him injury...." *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136. Here, Classic Cable, as the franchise applicant, was clearly an object of the Cities' rejection of the franchise requests; Classic Cable's inability to operate cable television systems in the Cable Cities, its alleged injury, is directly traceable to the Cities' challenged conduct, the Cities' rejection of Classic Cable's franchise requests.

■ The question of Classic Communication's standing to sue the Cable Cities is more problematic. Classic Communications, as the parent corporation, has a discrete corporate existence and is treated independently of its subsidiaries in the absence of extraordinary circumstances. 18 Am.Jur.2d *Corporations* § 55 (1985). *See Quarles v. Fuqua Indus. Inc.,* 504 F.2d 1358, 1362–63 (10th Cir.1974). Thus, in order for Classic Communications to have standing to sue, it must allege the Cable Cities caused it, as a separate and distinct corporation, to suffer some redressable injury to an enforceable legal right. Injury that arises solely out of harm done to a subsidiary corporation, however, is insufficient to confer standing to sue on a parent corporation. *K–B Trucking Co. v. Riss Int'l Corp.,* 763 F.2d 1148, 1154 (10th Cir.1985); *RTC v. Fleischer,* 848 F.Supp. 917, 923 (D.Kan.1994).

■ Plaintiffs' amended complaint is somewhat vague concerning the causal connection between Classic Communications' injury and the Cable Cities' challenged conduct. However, in drawing all reasonable inferences in favor of Classic Communications, the court cannot say beyond doubt that plaintiffs' can prove no set of facts connecting Classic Communications' alleged harm to the Cable Cities' challenged conduct. There is insufficient factual development, at this early stage of litigation, to properly dismiss Classic Communications for lack of standing.

■ The Cable Cities also contend that Classic Communications is statutorily barred

by Kan.Stat.Ann. § 17–7307 from pursuing claims against the cities. Kan.Stat.Ann. § 17–7307 provides that "a foreign corporation ... *which has done business in this state* without authority shall not maintain any action...." (Emphasis added). A corporation is "doing business" in Kansas if it "has an office or place of business within this state, or a distributing point herein, or deliver[s] wares or products to resident agents in this state for sale, delivery or distribution...." Kan.Stat.Ann. § 17–7303. By its plain meaning, Kan.Stat.Ann. § 17–7303 does not appear to include merely applying for a franchise as "doing business." Nor do any cases hold as such. Under Kansas law, then, applying for a franchise, without more, is not "doing business" such that Kan.Stat.Ann. § 17–7307 would apply. Accordingly, Kan.Stat.Ann. § 17–7307 does not prevent Classic from pursuing its claims against the Cable Cities.

■ The Cable Cities further contend that, even if the statutory bar of Kan.Stat.Ann. § 17–7307 is inapplicable, the fact that Classic Communications is not registered to conduct business in Kansas is fatal to its claims against the cities. The gist of this argument appears to be that Classic Communications cannot claim injury, and hence lacks standing, because it never was authorized to conduct any sort of business in Kansas to begin with. The court disagrees. There is no reason why Classic could not first seek the required franchises before registering to do business. Nor is there any reason to believe that Classic would have been unable to obtain the right to conduct business in Kansas. Without some reasonable basis to show that Classic Communications was unable or unwilling to conduct its cable business should it have been granted a franchise, Classic Communications' allegation that the cities were the cause of its lost business suffices, at this juncture, to establish standing to sue.[2]

## B. Recovery of Damages

■ The Cable Cities next move to dismiss any claims for money damages made

pursuant to federal and state antitrust laws. The Cities contend that their immunity from antitrust claims for damages is absolute and that such immunity is set forth in 15 U.S.C. § 35 and Kan.Stat.Ann. § 12–205. Classic Cable's response does not address the Cities' claimed immunity from damages, and Classic offers no legal authority to refute what appear to be clear statutory bars to such claims. Therefore, to the extent Classic is attempting to assert against the Cities any claims for damages, costs, attorneys' fees or interest under federal antitrust law, or any claims for damages under Kansas antitrust law, such claims fail to state a claim for which relief may be granted and are dismissed. The validity of plaintiff's claims for injunctive relief under state and federal antitrust law will be addressed next.

## C. Sherman Act Claim

■ The Cable Cities move to dismiss Count Two of plaintiff's amended complaint, the Sherman antitrust claim. The Cities assert immunity from the antitrust claim under the state action doctrine first announced in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and extended to municipalities in *Allright Colorado v. City and County of Denver,* 937 F.2d 1502 (10th Cir. 1991). To acquire the protection of state action immunity, a municipality must show the state legislature both authorized the challenged action and intended to displace competition with regulation. *Allright Colorado,* 937 F.2d at 1506. The Cities contend they meet these requirements because they acted pursuant to authority clearly articulated by state statute, and the Kansas legislature contemplated anticompetitive regulation when it enacted Kan.Stat.Ann. § 12–2001, *et seq.* Therefore, the Cities argue, they are entitled to *Parker* state action immunity from plaintiffs' antitrust claim.

■ In response, Classic Cable does not dispute the existence of the elements of *Parker* state action immunity. Classic instead attempts to defeat the Cities' state

**2.** For the remainder of this Memorandum and Order, the terms "Classic" and "plaintiff" denote Classic Cable, Inc.

action defense by advancing a rather novel preemption argument, which appears to have two premises. The first premise is Classic's theory that "if a local statute, which on its face is consistent with federal law, is enforced in such a way that the results are inconsistent with a federal statute, that local statute is preempted by the federal statute." The second premise is that *Parker* immunity is not a valid defense where the challenged action was performed pursuant to a state statute that has been preempted by federal law. In reply, the Cities appear to misconstrue the first premise of Classic's argument as an argument for implied conflict preemption. The Cities assert that the Kansas statutes are not preempted and, logically, never reach the second premise of Classic Cable's argument.

Classic Cable cites *Livadas v. Bradshaw*, 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) in support of the first premise of its preemption theory. The force of that case as precedent, however, is questionable. *Livadas* dealt exclusively with the preemption of state labor law by the National Labor Relations Act. 512 U.S. at 107, 114 S.Ct. at 2068. It did not address the effect of federal preemption on state action immunity. *Id.* Nor did it involve antitrust claims, *Parker* immunity, the Cable Act, or the Telecommunications Act. *Id.*

Classic would point out that *Livadas* was cited for the particular legal principle that a policy interpreting a valid state statute may be preempted by federal law. Nonetheless, the connection to the present case is tenuous. The *Livadas* Court merely recognized that a policy made to explain or enforce a valid state statute may be preempted where that policy conflicts with federal law. 512 U.S. at 107, 114 S.Ct. at 2068. It did not suggest that the state statute under which the offending policy was promulgated is also preempted. *Id.*

Classic also cites *Chambers v. Capital Cities/ABC*, 851 F.Supp. 543 (S.D.N.Y.1994) in support of the first premise of its preemption theory. The court finds *Chambers* unpersuasive. While we agree with the *Chambers* court that neither state nor local laws may be enforced or implemented in such a way as to frustrate the objectives of federal law, we do not agree that a municipality should incur antitrust liability simply for contravening some unrelated federal statute. Violations of, say, the federal Cable Act or Telecommunications Act should be pursued as just that—violations of independent federal statutes. Such violations should not also neutralize a municipality's immunity to federal antitrust law.

■■■■ In addition to its lack of convincing precedent, Classic's preemption argument is inconsistent with the objectives of *Parker* immunity. The fundamental objective of the *Parker* immunity doctrine is to protect state action from federal antitrust scrutiny. *Hallie v. City of Eau Claire*, 471 U.S. 34, 44 n. 7, 105 S.Ct. 1713, 1719 n. 7, 85 L.Ed.2d 24 (1985). Federalism principles demand that antitrust goals yield to state action if Congress has not plainly indicated a contrary result. *See Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 56–57, 105 S.Ct. 1721, 1726–27, 85 L.Ed.2d 36 (1985). Classic's preemption theory would undermine these principles by depriving a municipality of its protection from federal antitrust scrutiny whenever its conduct could be construed to be in conflict with a federal statute.

■■■■ Classic also proposes that state action immunity is not a valid defense where a municipality exceeds or abuses its statutory grant of authority. The Cable Cities disagree with Classic's statement of the law and contend that this court has previously considered and rejected such a limit on state action immunity in *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence, Kansas*, 715 F.Supp. 1000 (D.Kan.1989), *aff'd*, 927 F.2d 1111 (10th Cir. 1991). In *Jacobs*, we stated that "once it is established that defendants are entitled to state action immunity, any further inquiry into the motives or reasons for defendants' decision is irrelevant." 715 F.Supp. at 1009. The Cities argue the *Jacobs* "no further inquiry" rule should apply in this case to preclude the court from considering whether the Cities exceeded or abused their statutory grant of authority.

The court agrees with Cable Cities that in *Jacobs* we declined to examine the subjective motives or reasons behind the decisions of the city council. Nevertheless, we are not convinced that certain improper conduct might not defeat state action immunity. Although the Tenth Circuit Court of Appeals affirmed our decision in *Jacobs,* it did not hold that exceeding or abusing authority could never defeat state action immunity. 927 F.2d at 1111. On the contrary, the Appeals Court only held that the plaintiff's allegations were insufficient, "in the situation presented," to defeat *Parker* immunity. *Id.* That court expressly qualified its analysis by noting at the outset that "appellants do not allege that the city commissioners engaged in illegal or fraudulent actions." *Id.* at 1122. Indeed, it appears that the Appeals Court left open the possibility that, given certain improper conduct, a local government's actions could fall outside the state action immunity doctrine.

However, even assuming the Tenth Circuit would recognize an exception to *Parker* immunity, we disagree with Classic that such exception would be so broad as to be triggered whenever a municipality oversteps its statutory grant of authority. Rather, it appears from *Jacobs* that such an exception would be quite narrow, and probably limited to certain illegal or fraudulent acts. Allegations of self-dealing, standing alone, would be unlikely to defeat state action immunity. Likewise, no exception would exist for alleged conspiracies. *See Columbia v. Omni Outdoor Advertising,* 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). *See, also, Buckley Construction v. Shawnee Civic and Cultural Development Authority,* 933 F.2d 853 (10th Cir.1991).

Moreover, the policy underlying the state action doctrine also weighs against recognizing a broad exception to the doctrine. The fundamental policy of the *Parker* exception is to immunize state action from federal antitrust scrutiny. *Hallie,* 471 U.S. at 44 n. 7, 105 S.Ct. at 1719 n. 7. To allow such scrutiny whenever it is alleged that state or local

decisionmakers have exceeded or abused their authority would defeat the purpose of the state action doctrine. As a general rule, then, it is best to leave the scrutiny of such misconduct to the state courts. *Jacobs,* 715 F.Supp. at 1010. *See Areeda, Antitrust Immunity for State Action after Lafayette,* 95 Harv.L.Rev. 435, 449–50 (1981).

The court finds that the allegations of misconduct detailed in Classic's amended complaint and response are insufficient to defeat the Cable Cities' state action immunity. Plaintiff's amended complaint merely alleges "a combination or conspiracy" between Rural and the Cable Cities. But as already noted, allegations of conspiracy are not enough to defeat state action immunity. Nor are plaintiff's allegations that "Rural and several of the Cities' council members were one and the same" or that one of the Cities "overstepped its statutory authority" enough to defeat state action immunity. Without an element of fraud or illegality, allegations of conspiracy, self-dealing, and "overstepping statutory authority" are not enough to invoke an abuse of authority exception to state action immunity.

Both of Classic's arguments fall short of convincing the court to dilute the state action immunity doctrine. Accordingly, the Cities' motions to dismiss Count Two of plaintiff's amended complaint are granted.[3]

### D. Kansas Antitrust Claim

 The Cable Cities also assert *Parker* state action immunity as a defense to Count Three of Classic's complaint, the Kansas antitrust claim. Although the Cities acknowledge the absence of Kansas cases applying *Parker* immunity to Kansas antitrust laws, they argue that the Kansas Supreme Court would likely adopt the *Parker* immunity doctrine if presented with the opportunity. The court disagrees.

As the court noted above, the fundamental purpose of the state action doctrine is to immunize state action from federal antitrust

---

3. In dismissing Classic Cable's Sherman antitrust claim, the court assumed as true Classic's allegation that Rural and several of the Cities' council members "were one and the same."

Therefore, no purpose would be served by permitting Classic Cable to conduct additional discovery concerning Rural's influence on the Cities' decisions.

scrutiny. *Hallie,* 471 U.S. at 44 n. 7, 105 S.Ct. at 1719 n. 7. Where, as here, federal antitrust laws are not implicated, the purpose behind state action immunity disappears. Even the underlying policy of state action immunity is inapplicable to the relationship between a state and its municipalities. The *Parker* immunity doctrine was founded on federalism grounds as a means to protect the delicate relationship between the federal and state governments, both of which are sovereign. *Parker,* 317 U.S. at 341, 63 S.Ct. at 307. In contrast, municipal governments are not sovereign, and the same concerns that affect the relationship between the state and national governments are not present between a state and its municipalities.

 The Cities assert that *Parker* immunity has been applied in cases arising under similar state antitrust laws. In support, the Cities cite *Aurora Cable Communications v. Jones Intercable,* 720 F.Supp. 600 (W.D.Mich.1989). The court finds *Aurora Cable* unhelpful to the Cities' position. *Aurora Cable* involved the application of the *Noerr–Pennington* doctrine to state antitrust laws. 720 F.Supp. at 600. It did not concern *Parker* immunity. *Id.* Indeed, the *Aurora Cable* court did not even mention *Parker* immunity or state action immunity. *Id.* An argument by analogy would also be unhelpful, as the two doctrines are fundamentally different. *Parker* immunity protects states and state supervised municipalities from federal antitrust scrutiny, and is based on federalism principles. *See Parker,* 317 U.S. at 341, 63 S.Ct. at 307. *See, also, Allright Colorado v. City and County of Denver,* 937 F.2d 1502 (10th Cir.1991). In contrast, the *Noerr–Pennington* doctrine protects from antitrust liability those who petition government for redress, and is based on the constitutional right to associate and to petition government. *See Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). *See, also, Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). By definition, then, the *Noerr–Pennington* doctrine is not applicable to the government actor.

The court finds the Cable Cities' state action immunity defense to Classic's Kansas antitrust claim without merit. Accordingly, the Cities' motions to dismiss Count Three are denied.

### E. Section 1983 Claim

 The Cable Cities contend that Classic's 42 U.S.C. § 1983 claims are precluded by the existence of a comprehensive scheme of remedies available under the Cable Act and the federal antitrust laws. In support of this contention, the Cities cite *Middlesex County Sewerage Auth. v. National Sea Clammers Assoc.,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). The *Sea Clammers* court held that "when the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." The court disagrees, however, that the rule announced in *Sea Clammers* applies in this case.

As the Sixth Circuit stated in *Lillard v. Shelby County Bd. of Educ.,* the *Sea Clammers* doctrine "speaks only to whether federal statutory rights can be enforced both through the statute itself and through section 1983"; it does not "stand for the proposition that a federal statutory scheme can preempt independently existing constitutional rights, which have contours distinct from the statutory claim." 76 F.3d 716, 723 (6th Cir.1996) (emphasis in original). The Tenth Circuit recently adopted this rationale in *Seamons v. Snow,* 84 F.3d 1226 (10th Cir.1996). Here, Classic is not attempting to predicate its 42 U.S.C. § 1983 action on violations of the Cable Act or Sherman Antitrust Act. Instead, Classic is using 42 U.S.C. § 1983 as a vehicle to vindicate rights arising independently under the Constitution. Since, by *Seamons,* federal statutory schemes do not preempt independently existing constitutional rights, the remedial schemes available under the Cable Act and the Sherman Act do not preempt the independently existing constitutional rights upon which Classic bases its 42 U.S.C. § 1983 claim. The next step, then, is to examine the merits of the alleged constitu-

tional violations that support Classic's 42 U.S.C. § 1983 claim.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both the deprivation of a federal right and that the alleged action was taken under color of state law. *Jacobs, Visconsi & Jacobs v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir.1991). The parties do not dispute that the Cities acted under color of state law. Therefore, the court need only address whether Classic was deprived of a federal right when the Cities denied the franchise requests. Classic bases its 42 U.S.C. § 1983 claim on two allegations: 1) deprivation of due process as guaranteed by the Fourteenth Amendment to the United States Constitution; and 2) infringement of its right to free speech as guaranteed by the First Amendment to the United States Constitution.[4]

### 1. Due Process

■■■■■ Classic contends it was denied procedural due process because the Cable Cities arbitrarily refused Classic's cable television franchise request. As an initial matter, however, Classic must show it had a property interest sufficient to invoke procedural protections. *Curtis Ambulance v. Board of County Commissioners*, 811 F.2d 1371, 1375 (10th Cir.1987). To establish a property interest in a particular benefit, one must have a "legitimate claim of entitlement" to it. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "[A]n abstract need or desire for it" or a "unilateral expectation" is insufficient. *Id.* In deciding if the requisite property interest is present, a court must determine whether the applicable state law conferred such a property interest. *Id.; Jacobs, Visconsi & Jacobs*, 927 F.2d 1111 (10th Cir.1991). Moreover, when analyzing whether a plaintiff presents a legitimate claim of entitlement, a court must focus on the degree of discretion given the decision-maker and not on the probability of the decision's favorable outcome. *Jacobs*, 927 F.2d at 1111, citing *Carey v. Piphus*, 435

U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978).

■■■■ Classic Cable contends it has a property interest in the award of the requested franchise. This entitlement, Classic argues, "arises out of the very provisions regulating their disbursement." Thus, the court must look to those Kansas statutes which regulate the granting of municipal cable television franchises, Kan.Stat.Ann. §§ 12–2006 and 2007, to decide whether Kansas law creates a legitimate expectation of entitlement to a cable franchise. Kan.Stat.Ann. § 12–2006 expressly grants a city the discretionary right to permit or prohibit anyone from furnishing cable television services within its corporate limits. That statute's discretionary language, however, is not consistent with the creation of any expectation of entitlement to a cable franchise. Moreover, the statute does not contain any limitations on the city's exercise of its discretionary right to permit or deny an applicant's cable franchise which might otherwise give rise to a reasonable expectation of entitlement. *See, e.g., Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir.1980) (finding no protected property interest, where gaming statute gave board "full and absolute power and authority" to grant or deny gaming licenses).

■■■■ Kan.Stat.Ann. § 12–2007 is also unhelpful to Classic's argument. That statute provides that no person may provide cable services or conduct a cable business without first obtaining a franchise from the local city. However, it does not impose any requirement that a city actually grant such a franchise. In fact, Kan.Stat.Ann. § 12–2007 expressly provides that a city has the discretion to grant or not to grant cable television franchises. Finally, the court agrees with the Cable Cities in that the mere fact that a city's decision in granting or denying franchises must be "reasonable" and in accordance with state and federal guidelines, is insufficient to confer upon franchise applicants a legitimate claim of entitlement. *See Jacobs*, 927 F.2d at 1111 (holding the requirement that a city's zoning decisions be

---

**4.** Unlike Plaintiff's original complaint, plaintiff's first amended complaint contains no allegations of equal protection violations.

reasonable and based upon legally determined factors was insufficient to confer upon an applicant for a zoning change a legitimate entitlement to a zoning change). *See, also, Buckley Construction v. Shawnee Civic & Cultural Development Auth.,* 933 F.2d 853 (10th Cir.1991) (holding that the lowest bidder for a city contract does not have a legitimate expectation of receiving the contract since the applicable statute granted the city the discretionary right to decide who was the lowest "responsible" bidder). For these reasons, the court finds that Classic has no reasonable expectation of entitlement to a cable franchise, and Classic may not, therefore, rest its 42 U.S.C. § 1983 claim on a violation of due process.

### 2. First Amendment Claim

Classic Cable contends that the Cities violated its First Amendment rights by wrongfully rejecting its cable television franchise requests. In response, the Cities suggest that Classic's allegation is not sufficient to withstand their motions to dismiss. The Cities point out that the Tenth Circuit, in *Community Communications Co. v. City of Boulder, Colo.,* 660 F.2d 1370 (10th Cir.1981), recognized that certain mediums, like cable television, require the use of a limited, invaluable part of the public domain. The Cities further point out that the *Community Communications* court held "no individual disseminator has the constitutional right to be the particular person who obtains the privilege to use the medium." Thus, the Cities argue, they did not violate Classic's First Amendment rights because, under *Community Communications,* Classic has no constitutional right to use the public domain to disseminate its messages by cable television.

The court disagrees with the Cities' application of *Community Communications.* In addition to factual dissimilarities, the law of *Community Communications* is not helpful to the Cities' argument. That court premised its holding on what it perceived as a likeness between cable and broadcast television. *Community Communications,* 660 F.2d at 1370. The *Community Communications* court noted that "inherent limitations

on the number of speakers who can use a medium to communicate has been given as a primary reason why extensive regulation of wireless broadcasting is constitutionally permissible." *Id.* Thus, that court reasoned, since cable television is also inherently limited by the number of speakers, extensive regulation of cable television is likewise constitutionally permissible. The validity of the *Community Communications* court's premise, however, has become questionable in light of a more recent Supreme Court decision which appears to eliminate the "scarcity" argument for treating cable television like broadcast television. In *Turner Broadcasting System v. FCC,* the Court stated that "the broadcast cases are inapposite in the present context because cable television does not suffer from the inherent limitations that characterize the broadcast medium." 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). Absent any comparable limitations, the *Community Communications* court's analogy between cable and broadcast television loses much of its force, and its holding should have little impact on the present case.

Also unhelpful to the Cities' argument are several Supreme Court decisions clearly indicating that restrictions on cable television operators implicate the free speech and press clauses of the First Amendment. In *City of Los Angeles v. Preferred Communications,* the Court recognized that a municipal ordinance restricting cable franchising raises a cognizable First Amendment claim. 476 U.S. 488, 494–95, 106 S.Ct. 2034, 2037–38, 90 L.Ed.2d 480 (1986). This notion was later repeated by the Court in *Leathers v. Medlock,* 499 U.S. 439, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991), and most recently applied in *Turner Broadcasting System,* 512 U.S. at 622, 114 S.Ct. at 2445 ("Cable programmers and cable operators engage in and transmit speech, and they are entitled to the protection of the speech and press provisions of the First Amendment").

At this juncture, facing as we do an incomplete factual record, and an area of law that is at best unsettled, the court is unable to find beyond doubt that Classic can prove no set of facts supporting its claim which would entitle it to relief. The Cities' motions to

dismiss Classic's 42 U.S.C. § 1983 claim based on the deprivation of its free speech rights are therefore denied.

### F. Cable Act Claim

■■■ Next, the Cities move to dismiss Classic's claim under 47 U.S.C. §§ 541 and 555 of the Cable Act. 47 U.S.C. § 541 provides in part that "a franchising authority may not ... unreasonably refuse to award an additional competitive franchise." If a franchise is unreasonably refused, 47 U.S.C. § 555 provides the potential franchisee with a private cause of action. The Cities contend that they did not "unreasonably refuse" to grant franchises to Classic. Thus, the Cities argue, since only unreasonable denials of franchises are actionable, and since the facts establish that its denial was not unreasonable, they are entitled to dismissal of Classic's Cable Act claim.

The court disagrees with the Cities' reasoning. Whether the Cities' refusal was unreasonable is not an issue at this stage of the litigation. To survive a motion to dismiss, a plaintiff need only state a claim for which relief may be granted unless it appears beyond doubt that the claimant can prove no set of facts supporting its claim. *H.J. Inc.,* 492 U.S. at 249–50, 109 S.Ct. at 2905–06. In the present case, Classic alleges a violation of the Cable Act which, if proven, would entitle it to relief. Moreover, the facts are insufficiently settled to find beyond doubt that Classic Cable can prove no set of facts supporting its claim. It would be improper for the court, at this early stage of the litigation, to deny Classic Cable the opportunity to offer evidence in support of its claim. Defendant's motions to dismiss Classic's Cable Act claim are denied.

### G. Attorneys' Fees

Classic asserts that it is entitled to recover attorneys' fees for its federal antitrust claims. The Cable Cities contend that, pursuant to 15 U.S.C. § 35, they are immune from claims for attorneys' fees made under federal antitrust law. Classic's response does not address the Cities' claimed immunity from attorneys' fees, and Classic offers no legal authority to refute what appears to be a clear statutory bar to such claims. Any claim for attorneys' fees made under federal antitrust law against the Cities is therefore dismissed.

Classic also asserts that it is entitled to recover attorneys' fees under 42 U.S.C. § 1988, which applies to claims brought pursuant to 42 U.S.C. § 1983. The Cities do not contest the application of 42 U.S.C. § 1988, but only suggest that Classic's claims for attorneys' fees should be dismissed along with its underlying 42 U.S.C. § 1983 claims. As discussed above, however, the court denied the Cities' motions to dismiss and upheld Classic's 42 U.S.C. § 1983 claim based on Classic's allegations of free speech violations. Accordingly, the Cities' motions to dismiss Classic's claims for attorneys' fees brought under 42 U.S.C. § 1983 is denied.

Finally, Classic seeks recovery of attorneys' fees under Kan.Stat.Ann. § 50–108, which applies to claims brought pursuant to the Kansas Antitrust Act. The Cable Cities argue that this claim for attorneys' fees should be dismissed along with the entire state antitrust claim. Since the court has denied the Cities' motions to dismiss Classic's entire antitrust claim, dismissal of any claim for attorneys' fees brought pursuant to that claim is also denied.

**IT IS THEREFORE BY THE COURT ORDERED** that the motions to dismiss of defendants City of Palco (Doc. 43), City of Damar (Doc. 44), City of Morland (Doc. 45), City of Norcatur (Doc. 48), and City of Gorham (Doc. 50) are granted in part and denied in part. Defendants' motions are granted as to the issue of damages claimed pursuant to federal and state antitrust law, the Sherman antitrust claim, and the claim for attorneys' fees under federal antitrust law. Defendants' motions are denied as to the Cable Act claim, the Kansas antitrust claim, the 42 U.S.C. § 1983 claim, and as to claims for attorneys' fees under Kansas antitrust law and 42 U.S.C. § 1983. With regard to the question of standing, defendants' motions are granted with respect to Classic Telephone.